IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| FRED LAW,<br><br>    Plaintiff,<br><br>v.<br><br>ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 1:11-cv-00020-EJF<br><br><br>**Magistrate Judge Evelyn J. Furse** |

## **I. INTRODUCTION**

Before the Court is Defendant Allstate Property and Casualty Insurance Company's ("Allstate") Motion for Partial Summary Judgment regarding Plaintiff's Second Cause of Action, breach of the implied covenant of good faith and fair dealing. The parties have consented to jurisdiction by the undersigned magistrate judge. Defendant removed this action, originally filed by Plaintiff in the Third Judicial District Court, Salt Lake County, Utah, to this Court pursuant to 28 U.S.C. §§ 1332, 1441. Plaintiff Fred Law alleges that Allstate breached the implied covenant of good faith and fair dealing by refusing to pay the full limits of his underinsured motorist policy. Defendant asks this Court to grant summary judgment because it contends no genuine dispute as to any material fact exists, and therefore, the Court should grant summary judgment in Allstate's favor as a matter of law.

Having carefully reviewed the parties' memoranda, the Court concludes, viewing the facts in the light most favorable to the Plaintiff, that Plaintiff's Second Cause of Action for

1

breach of the duty of good faith and fair dealing fails as a matter of law.  Accordingly, the Court GRANTS Defendant's Motion for Partial Summary Judgment.

## II. STANDARD OF REVIEW

Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted).

## III. FACTUAL BACKGROUND[1]

The parties do not dispute the following facts.  Mr. Law purchased car insurance from Allstate, including underinsured motorist coverage.  On June 30, 2006, a car struck Mr. Law's vehicle from behind causing injury to his neck.  In his Complaint and Jury Demand, Mr. Law asserts a claim for breach of the covenant of good faith and fair dealing against Allstate on the basis of its allegedly intentional failure to pay the policy limits of his underinsured motorist policy and the allegedly improper handling of his claim.  As of July 26, 2010, Mr. Law's medical bills totaled at least $8,721.84.[2]

---

[1] The Factual Background comes from the parties' memoranda; the opinion will note where facts are disputed, as necessary.

[2] Allstate preserved its right to dispute this fact later, but admits it for purposes of the motion.

In early June 2010, the insurance company of the driver whose vehicle struck Mr. Law paid him $50,000, representing the policy limits.[3] Mr. Law used some of this payment "to pay past medical bills, personal bills, money owed to his wife and living expenses." On July 26, 2010, Mr. Law sent a demand letter to Allstate seeking the full $100,000 policy limits attaching the police report, a medical expense summary, a report of a life care planner estimating future medical expenses, medical records, and medical bills. The demand letter Mr. Law sent to Allstate quoted the opinion of Dr. Junius Clawson that the accident represented the most likely cause of Mr. Law's symptoms and that as a result of Mr. Law's symptoms, he would "most likely undergo surgical intervention within the next five years." The letter also estimated the future costs of the surgery at $90,314.50, based on a report by an outside consultant.

The records Mr. Law submitted to Allstate contained the following information. After the accident on June 30, 2006, Mr. Law visited a chiropractor, Dr. Vosti, who he had also seen on June 19, 2006. At the June 19, 2006 visit, Mr. Law also completed a form indicating he had previously seen a chiropractor. Allstate received a pain diagram from the June 19, 2006, visit with no indication of neck pain. Nonetheless, Dr. Vosti's notes of the June 30, 2006 visit indicate the date of onset for neck pain as June 19, 2006. The billing codes used also reference a neck injury. Allstate asked Mr. Law's counsel for additional records from the June 19, 2006 visit, which it did not receive prior to making a decision in Mr. Law's case.[4] The records provided showed another visit to Dr. Vosti on October 4, 2006.

---

[3] Allstate preserved its right to dispute this fact later, but admits it for purposes of the motion.

[4] While Mr. Law believes he provided all relevant records to Allstate, Allstate's state of mind is what is at issue. Allstate did not believe it received all relevant records because of the reference to a June 19, 2006, chiropractor visit, which Allstate believed lacked a full record.

Mr. Law subsequently visited Dr. Clawson at the Intermountain Spine Institute on December 12, 2006. Dr. Clawson's report states that Mr. Law had "a mild C5 left radiculopathy secondary to a herniation that was most likely caused by" the collision Mr. Law was involved in on June 30, 2006. Dr. Clawson's report notes that Mr. Law's "symptoms consist of a constant dull pain radiating into the left side of his neck . . . [and] some shoulder pains on the left side. . ." Mr. Law visited Dr. Clawson again in early 2010. Dr. Clawson's report from that visit notes that Mr. Law continued to complain of pain and had weakness in his left arm. Dr. Clawson's report also notes that Mr. Law "continue[d] to affirm his lack of symptoms prior to his automobile collision of June 30, 2006."

Mr. Law saw a Dr. Krull on May 29, 2007. He attended therapy for a couple of weeks in February 2008 and saw his regular doctor in March 2008.

Susan Robbins evaluated Mr. Law's claim for Allstate, reviewing the demand letter, medical records and bills, damage to Mr. Law's car, and inputting the information into a database system called Colossus designed to evaluate such claims. As part of this review, Ms. Robbins also considered whether Mr. Law had any prior injuries. Ms. Robbins valued Mr. Law's claim with Allstate at $30,000 to $50,000. Ms. Robbins's review was an "initial assessment[] subject to review and approval by a claims evaluation manager," a review to which all claims are subject. Allstate then assigned Thomas Thompson to review Mr. Law's claim. Mr. Thompson also reviewed Mr. Law's demand letter and medical bills and records, and valued Mr. Law's claim at less than what the other driver's insurer had paid to Mr. Law and less than what Mr. Law had already paid for medical expenses. Mr. Thompson did not believe Mr. Law provided Dr. Clawson with an accurate history because of a chiropractic record for Mr. Law noting a diagnosis code for the cervical spine with an onset date of June 19, 2006. Mr.

4

Thompson's review included Mr. Law's June 19, 2006 pain diagram and Mr. Law's statements that he did not have neck pain prior to the accident. Based on these discrepancies "Allstate found inconsistencies between Mr. Law's claim and the records provided." Allstate did not attempt to interview Mr. Law about his symptoms. Allstate offered to pay Mr. Law $5,000. Allstate ultimately avers that the difference between its and Mr. Law's valuation of Mr. Law's claim arose from its belief that: (1) Mr. Law provided "an incomplete history omitting at least portions of [his] pre-existing conditions"; (2) "that the majority of [Mr. Law's] demand for limits was related to a surgical procedure recommended four years following the subject accident and following an intervening accident in another state"; (3) "that the procedure was not described as mandatory, but was a potentially necessary procedure five years in the future"; and (4) "that there was a relatively low force of impact and collision." Mr. Law admits he does not have information about the valuation of underinsured motorist claims such as his own.

When Allstate reviewed Mr. Law's claim in 2010, its only medical evaluation of Mr. Law's future medical needs was Dr. Clawson's report. After this litigation was commenced, Dr. Stephen Marble conducted an independent medical exam of Mr. Law. Dr. Marble's report stated:

> While I would agree that the June of 2006 MVA appeared to cause an aggravation of Mr. Law's cervical spine condition, I cannot now, five and a half years removed from the relatively minor accident conclude that the accident caused a distinct lesion/injury, which is ultimately going to necessitate cervical spine surgery that would not have been necessary, but for the accident.

## IV. DISCUSSION

In its motion for summary judgment, Allstate argues, *inter alia*, that the parties simply disagree over the value of Mr. Law's claim and that mere difference of opinion concerning the value of the claim does not support a finding that Allstate breached the covenant. Allstate also

argues that its valuation of Mr. Law's claim was fairly debatable, and therefore Allstate did not breach the covenant by rejecting Mr. Law's demand for policy limits. The Court will consider these two arguments together, as it finds them connected to the same legal argument.

### A. Fairly Debatable

To comply with the covenant of good faith and fair dealing "a party must act consistently with the agreed common purpose and the justified expectations of the other party." *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 27, 56 P.3d 524, 533 (Utah 2002) (quotation omitted).[5] With respect to first-party insurance, the:

> implied covenant of good faith performance contemplates . . . that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim. . . . If an insurer acts reasonably in denying a claim, then the insurer did not contravene the covenant. . . . The denial of a claim is reasonable if the insured's claim is fairly debatable.

*Id.* (quotations and citations omitted). "If the evidence presented creates a factual issue as to the claim's validity, there exists a debatable reason for denial, thereby legitimizing the denial of the claim, and eliminating the bad faith claim." *Cailloux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct. App. 1987). Whether the claim denial was fairly debatable constitutes a question of law for the court to decide. *Fort Lane Vill., L.L.C. v. Travelers Indem. Co. of Am.*, 805 F. Supp. 2d 1236, 1242 (D. Utah 2011) (citation omitted). The question of fairly debatable is directed at the question of whether the insurer's position was fairly debatable at the time of denial, not in 20/20 hindsight. *See Trujillo v. Am. Fam. Mut. Ins. Co.*, No. 1:08-CV-36-TS, 2010 WL 1901774, *4 (D. Utah 2010) (explaining why the court examines fairly debatable at the time of the denial).

---

[5] Because Mr. Law's claim for breach of the implied covenant is a state law claim and all of the relevant events took place in Utah, the Court applies Utah law.

Here, the evidence presented reflects a dispute as to the value of Mr. Law's claim. First, the parties disagree as to whether Mr. Law had symptoms in his neck prior to the accident on June 30, 2006. Allstate reads the records as demonstrating a pre-existing injury, while Mr. Law viewed the records as reflecting a mistake. On that point, Allstate's position is fairly debatable.

The parties also disagree as to whether Mr. Law provided a complete medical background to Dr. Clawson. Although Mr. Law "believes" he provided Allstate with all relevant medical records, Allstate did not believe Mr. Law provided all of his relevant medical records. Allstate points to the records from June 19, 2006 and July 7, 2006, as evidence that additional records exist which Mr. Law never provided. Allstate requested further records, and Mr. Law said there were no others. Allstate's position that it did not have full information based on the records it had was a fairly debatable position to take based on the evidence.

The parties also dispute whether Mr. Law will in fact require surgical intervention on his neck and the cost of the potential surgery. Mr. Law's doctor's opinion states "Mr. Law will most likely undergo surgical intervention within the next five years." A life care plan produced by an outside consultant estimated the cost associated with such a surgery to be $90,314.50. Mr. Law contends that estimate means he is injured in that amount. Allstate, rather, reads the letter as indicating a speculative treatment that may not have been caused by the accident at issue, but rather by an intervening accident, and may not even be needed at all. Again, these are fairly debatable positions to take. Thus, Allstate had a reasonable basis for valuing Mr. Law's claim as it did. Therefore, Allstate's refusal to accede to Mr. Law's demand for policy limits does not form a basis for a claim for breach of the implied covenant of good faith and fair dealing. *See Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 24, 133 P.3d 428, 435 (Utah 2006) ("If a claim

7

brought by an insured against an insurer is fairly debatable, failure to comply with the insured's demands cannot form the basis of bad faith." (citing *Prince*, 2002 UT 68, ¶ 34, 56 P.3d at 535)).

The findings in Dr. Marble's report, i.e. that he could not conclude that the June 2006 accident caused Mr. Law's symptoms, bolsters Allstate's claim that it had a reasonable basis for its valuation of Mr. Law's claim when it offered Mr. Law $5,000, but is not required to reach summary judgment in this case.  While Allstate did not have this information at the time it made its decision, the opinion supports Allstate's claim that it took a fairly debatable position.  The undisputed evidence demonstrates a reasonable debate regarding the value of Mr. Law's claim, making summary judgment in favor of Allstate on the good faith and fair dealing claim appropriate.

## V. CONCLUSION

Because Allstate's valuation of Mr. Law's claim was fairly debatable, his claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law.  For the reasons stated, the Court GRANTS Defendant's Motion for Partial Summary Judgment regarding Plaintiff's Second Cause of Action.

SO ORDERED.

DATED this 14th day of August, 2012.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge